Argued March 15; reversed March 29; rehearing denied
May 17, 1932.

## MILLER *v.* FRIEDMAN

(9 P. (2d) 488)

*C. W. Robison,* of Portland (Julius Cohn and Hy Samuels, both of Portland, on the brief), for appellant.

*D. P. Price,* of Portland (Robert R. Rankin, Bert S. Gooding and Frederick H. Drake, all of Portland, on the brief), for respondent.

CAMPBELL, J.   This is a suit to reform a written instrument, executed between plaintiff and defendant February 12, 1924.  Plaintiff alleges that he loaned defendant, during the year 1921, $3,000, and about a year later he loaned him an additional $3,600.  During the year 1923, defendant paid on these obligations $1,600, and the balance of indebtedness was evidenced by two promissory notes, one for $2,000 and one for $3,000.  That about February 12, 1924, these notes

were surrendered and a written contract for the sum of $5,000, to be paid in installments of $250 every three months, was substituted for said notes. This contract was secured by an installment contract covering real estate in Mount Tabor Villa and referred to as 31 East 78th street, belonging to defendant, on which was due $6,250, also payable quarterly in installments of $250 with interest at 7 per cent per annum. These installments and interest were to be applied on the $5,000 contract until it should be paid in full. To further secure plaintiff, defendant and his wife executed a deed to plaintiff conveying the said real estate, covered by the installment contract, with the understanding that said deed was to be considered a mortgage to secure the said sum of $5,000. Plaintiff alleges that he had prepared a contract for $5,000 as agreed upon and turned it over to defendant for examination by his attorney. That thereafter plaintiff was notified that the contract was satisfactory and that he should come to the office of defendant and it would be executed. Plaintiff alleges that he thereupon, on February 12, 1924, came to defendant's place of business and he and defendant signed the contract. At the same time defendant delivered the contract, together with the deed to the property covered by the installment contract. Plaintiff thereupon left the office of defendant in the Chamber of Commerce building, and while going down the elevator he examined the contract and observed that it had been rewritten, and the amount $5,000 omitted and $500 inserted instead. He also observed that the deed to the real estate had no witnesses to the signatures of the grantors. He thereupon immediately returned to the office of defendant and requested him to correct the mistakes, which defendant refused to do.

Defendant, in his answer, admits all of the transactions alleged in the complaint, but claims that he and plaintiff had been in partnership in business for some five or six years prior to February 12, 1924, and the $6,600 was the sum plaintiff paid to buy into the business. That the $1,600 which he paid plaintiff was a gift. That the two notes, the one for $2,000 and the one for $3,000, signed and delivered by defendant to plaintiff, were not to be paid unless the partnership business should turn out well and make enough money to pay them. He further alleges that on February 12, 1924, he and plaintiff had an accounting and settlement and finally agreed that in settlement of all their past business transactions, defendant would pay plaintiff the sum of $500 and that he signed the contract referred to in plaintiff's complaint, for that amount with the full understanding and consent of plaintiff. That he had paid $250 on the contract and tendered the balance of $250 with interest into court.

Upon the trial the court found for defendant, and plaintiff appeals.

■ This case presents questions of fact to be determined on conflicting, but none the less convincing, testimony. It is admitted that the sum of $6,600 passed from plaintiff to defendant. Plaintiff claims it to be a loan. Defendant, while he pleaded a partnership, in his testimony claimed it was for the purchase of ten thousand shares of Auto Transit Company and United Auto Bus Company stocks. The testimony is undisputed that this amount of stock was put into the hands of one Meyer Wax, a mutual friend of the parties. Mr. Wax, for whose credibility both plaintiff and defendant vouch, and who appears to be disinterested, testified that the notes and stock were put into his hands as an escrow, that upon payment of the

notes he was to return both the notes and stock to defendant. It appears from the testimony of Mr. Chester Dolph, a reputable attorney, who was the attorney for defendant about the time of the transaction but does not seem to have had anything to do with it, that this stock had been properly endorsed to plaintiff, but was never transferred on the books of the company. Mr. Dolph also testified that plaintiff claimed to him that he, plaintiff, had an interest in the company. All of Mr. Dolph's testimony can be reconciled with the story of plaintiff that the certificates of stock were put up as collateral to secure the payment of the $6,600. Mr. Melvin A. Carter, also a reputable attorney, testified that he prepared the $5,000 contract at the request of plaintiff, from memoranda given him by plaintiff. He further testified that on or about February 19, 1924, a few days after plaintiff received the signed contract for $500, that he, Mr. Carter, went to the office of defendant and overheard a conversation between plaintiff and defendant. The witness was asked:

"Q. What did Miller say?

"A. He started in by saying, 'Well, you owe me $5,000, don't you?' and Mr. Friedman answered by saying, 'Yes, I do, and I will see that you get every cent of it.' Then Mr. Miller says, 'Well, why aren't you willing to change the contract back from $500 to $5,000,' and Mr. Friedman says, 'Because I don't want you to have anything on me.' "

The making of the two notes, one for $2,000 and one for $3,000, the payment of $1,600 on the original $6,600, the wording of the contract as signed, all seem to indicate quite clearly that the money was a loan from plaintiff to defendant. It is not likely that a contract for only $500 would state that it was to be

paid in payments of $250 quarterly, nor is it probable that one business man would make a gift of $1,600 to another whose financial circumstances were at least equal to those of the giver. Opposed to this evidence is the testimony of defendant, his business associate Mr. Boyle, and his employee Mr. Joplin. Some of their testimony is directly contradictory to plaintiff's theory, and some of it is largely their conclusions.

The $1,600 was paid by defendant to plaintiff, $200 in cash, the balance by assignment of an installment contract covering Lot 8, Block 114 Stevens Addition, sometimes referred to as 401 East 11th street, on which was due $1,400 payable $25 per month. It appears that this monthly payment was, at least occasionally, made to defendant who turned it over to plaintiff. In the course of the trial defendant introduced a receipt for $250 which he claims was the first payment on his $500. This receipt was signed by the wife of plaintiff, who denied her signature on it. Defendant called an expert who testified that the signature was that of Mrs. Miller. On being recalled by the plaintiff, the expert testified that the receipt had been raised from $25 to $250. The receipt was purported to be a payment on contract on 31 East 78th street. The receipt clearly shows that it had been for a payment on a contract on 401 East 11th street. It does not require an expert to see that the receipt had been changed. It was in the possession of defendant until introduced at the trial. He made no explanation of the change.

We are convinced that plaintiff has sustained the allegations of the complaint by a preponderance of the testimony.

Plaintiff has asked in his complaint, not only that the contract be reformed by reinstating the figures

$5,000 wherever $500 occurs, but also asks that defendant be required to execute a warranty deed properly signed, witnessed and acknowledged, and that said deed be foreclosed as a mortgage.

■ The deed does not require witnesses in order to convey the interest of the grantors, as between the parties: *Alaska E. Co. v. Northern Mining Co.,* 152 Fed. 145; *Eadie v. Chambers,* 172 Fed. 73 (24 L. R. A. (N. S.) 879, 18 Ann. Cas. 1096).

It follows that the decree of the lower court should be reversed and one entered reforming the written instrument as prayed for in the complaint, and entering a judgment against defendant for $5,000 with interest at the rate of 7 per cent per annum from February 12, 1924; for $500 attorney's fees; and that the cause be remanded with instructions to bring in other parties, if any, interested in the real estate covered by the deed and that the deed be thereupon foreclosed. Neither party is to recover costs in this court.

It is so ordered.

BEAN, C. J., BROWN and BELT, JJ., concur.